MILES J. FELDMAN (BAR NO. 173383)
mfeldman@raineslaw.com
SONIA Y. LEE (BAR NO. 191837)
slee@raineslaw.com
MICHAEL N. JONES (BAR NO. 244320)
mjones@raineslaw.com
**RAINES FELDMAN LLP**
9720 Wilshire Boulevard, 5th Floor
Beverly Hills, CA 90212
Telephone: (310) 440-4100
Facsimile: (310) 691-1943

Attorneys for Plaintiff
CARL STORK

# UNITED STATE DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL STORK, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> JOHN TEXTOR, an individual; DIGITAL DOMAIN HOLDINGS, INC. (formerly known as WYNDCREST DD FLORIDA, INC., a Florida corporation); DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. **2:10-cv-07631-JHN-PLA** <br><br> Assigned to: <br> Judge Jacqueline H. Nguyen <br><br> **SECOND AMENDED COMPLAINT FOR:** <br><br> 1. **FRAUD;** <br> 2. **VIOLATION OF CALIFORNIA CORPORATIONS CODE;** <br> 3. **RECISSION OF STOCK PURCHASE AGREEMENT; AND** <br> 4. **NEGLIGENT MISREPRESENTATION** <br><br> **DEMAND FOR JURY TRIAL** |

Case No. 2:10-CV-07631 JHN (PLAx)
SECOND AMENDED COMPLAINT

Plaintiff Carl Stork ("Plaintiff") alleges, on information and belief, as follows:

## INTRODUCTION

1. This is an action to remedy a substantial fraud perpetrated by Defendant John Textor ("Textor") to benefit himself and Defendant Digital Doman Holdings, Inc., formerly known as Wyndcrest DD Florida ("DDH") (collectively, "Defendants"). Textor and Plaintiff in this action were members of the board of directors of Digital Domain (formerly known as Wyndcrest DD Holdings, Inc. and herein referred to as "DD California"). Textor and Plaintiff were each also shareholders in DD California. Unbeknownst to Plaintiff, during his tenure as a member of DD California's Board of Directors, Textor hid critical communications between Defendants and a company known as Century Communications Limited of Noida, India ("Century") regarding Century's express interest and actual proposal to purchase all of the shares of stock in DD California. The secret communications between Defendants and Century included a non-binding letter of intent from Century to Textor to acquire all of the shares of stock in DD California for $65,000,000 (the "LOI").

2. Despite the fact that the LOI presented a transaction that was in the best interests of the DD California shareholders, Defendants hid and suppressed the LOI (and the communications leading up to it) from DD California's board of directors, management and other shareholders, including Plaintiff. Defendants hid the Century LOI because (1) they were pressuring Plaintiff to sell his stock in DD California for a steep discount; (2) they were attempting to induce Plaintiff to resign from DD California's Board of Directors; and (3) they were attempting to siphon off DD California's goodwill and assets for their new company, DDH. Plaintiff and the other DD California directors have only recently learned of the depth of Defendants' deception. Plaintiff brings this action to rescind his stock purchase agreement with DDH and concurrently executed release and indemnification agreement with DDH and to recover damages.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the proceedings pursuant to 28 U.S.C. § 1332 because Plaintiff is a resident of a different state from the Defendants and the value of the matter in controversy exceeds $75,000.

4. Venue in this district is proper pursuant to 28 U.S.C. § 1441 because this Court is the United States District Court for the district and division embracing the place where the state court action was pending. Venue is also proper pursuant to the Agreement at issue here, which provides that venue for any dispute arising under the Agreement shall lie in the State and Federal courts of Los Angeles, California. Additionally, venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in the Central District of California.

5. This Court has personal jurisdiction over Defendant John Textor because he is a signatory to the Agreement, which provides that the parties submit to the personal jurisdiction of the courts of California. This Court also has personal jurisdiction over Defendant because of his substantial contacts with California. These include being a past shareholder and past and present member of the Board of Directors of DD California, a corporation with its principal place of business in Venice, California. Textor has also served as Chairman of the Board and Executive Chairman of the Board of DD of California, and has regularly attended Board of Directors meetings at DD California's offices in Venice, California. Additionally, the claims in this matter arise out of actions taken by Textor in California.

6. This Court has personal jurisdiction over Defendant DDH because DDH is a signatory to the Stock Purchase Agreement, which provides that the parties submit to the personal jurisdiction of the courts of California. This Court also has personal jurisdiction over Defendant DDH because of DDH's substantial contacts with California through the actions of its Chief Executive Officer John Textor, including actions taken by Textor in California that gave rise to the claims herein.

## PARTIES

7. Plaintiff Carl Stork is, and at all times mentioned herein was, a citizen of the State of Washington. Stork was formerly a director of and official shareholder in DD California. Stork does not bring this action in his capacity as a former director of DD California.

8. Defendant John Textor is, and at all times mentioned herein was, a citizen of the State of Florida, and the Chairman of the Board of DD California. Textor also is an officer and director of DDH.

9. Defendant DDH is, and at all times mentioned herein was, a corporation organized and existing under the laws of the State of Florida with its principal place of business in Port St. Lucie, Florida. Plaintiff is informed and believes that DDH was a shell corporation set up by Textor with the use of others' capital, including fraudulently obtained grant money from governmental agencies.

10. DD California is a visual effects and animation company, and at all times mentioned herein was, a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the Venice neighborhood of Los Angeles, California. All of DD California's offices and operations are located in Los Angeles, California.

## Facts Common to all Causes of Action

11. This action arises out of the parties' involvement in DD California, a visual effects and animation company.

12. DD California began producing visual effects in 1993 and is known for creating state-of-the-art digital imagery for feature films, television advertising, interactive visual media and the video game industry. DD California also provides technical software solutions for the visual effects and animation industries. DD California has been nominated for ten Academy Awards and has won seven. DD California produced the visual effects for such films as Transformers, Tron 2 (Tron: Legacy), Titanic, True Lies and The Curious Case of Benjamin Button.

13. In May 2006, Plaintiff purchased shares of stock in DD California and became an officer of the corporation and a member of the Board of Directors. Other shareholders included Defendant Textor, prominent film director Michael Bay and former NFL quarterback Dan Marino. Textor was also a member of DD California's Board of Directors, and has served as Chairman of the Board and Executive Chairman of the Board. Since 2006, the Board of Directors has met regularly and on multiple occasions each year in person, at DD California's office in Venice, California.

14. On or about July 31, 2006, Textor, Plaintiff and others entered into a Stockholder's Agreement (the "Stockholder's Agreement") outlining their rights and obligations with respect to each other as stakeholders in DD California.

15. Plaintiff is informed and believes and based thereon alleges that Textor also owns a stake in Defendant company DDH and has been using DDH to siphon off DD California's business, reputation, goodwill and relationships for his own gain, including but not limited to, defrauding governmental agencies out of millions of taxpayer dollars and property for DDH.

16. Plaintiff recently discovered that on or about June 30, 2009, Textor sold his shares of common stock in DD California to DDH for a purchase price of millions of dollars.

**A.   Textor Secretly Negotiates for the Sale of DD California.**

17. Since the parties' investment in DD California, through February 2010, Textor and Plaintiff were members of DD California's Board of Directors. In or about late 2009 through early 2010, DD California was suffering from cash flow difficulties. A planned public offering had failed to materialize and the company was looking for opportunities to help it out of its difficult situation.

18. Textor secretly sold his personal shares in DD California to DDH for millions of dollars, without disclosing the fact that he received millions of dollars in consideration for himself. DDH and Textor did so to leverage Textor's shares in DD

California as part of a scheme to defraud governmental agencies into providing tens of millions of dollars in taxpayer cash and property to DDH for Textor's own personal gain.

19. Plaintiff is informed and believes and based thereon alleges that in or about September 2009, Textor was approached by Century, as well as other companies based in India, concerning Century's express interest in acquiring DD California. Century commenced negotiations with Textor regarding its interest in purchasing DD California. Textor, however, failed to fully disclose his communications and negotiations to the DD California board and DD California management, including Plaintiff. Instead, from September 2009 to February 2010, Textor told Plaintiff at in-person meetings at DD California (in Venice, California) that the interest from Century "wasn't real," and hid certain communications and negotiations.

20. At this time, Defendants were trying to persuade Plaintiff to sell his shares of DD California at a steep discount. Defendants' communications about this subject included face-to-face meetings in Venice, California. Thus, Defendants kept both the value of Textor's sale of shares to DDH and the Century negotiations a secret from Plaintiff, and the DD California Board of Directors, to induce Plaintiff to sell his shares at a steep discount. Had Plaintiff known of Century's interest in purchasing DD California, he would not have agreed to sell his shares of stock in DD California.

21. Textor's secret discussions with Century resulted in Century providing a legitimate, non-binding Letter of Intent to Textor, alone, dated February 10, 2010 (the "February 10 LOI"), pursuant to which Century offered to purchase DD California for $65,000,000. Despite Textor's clear obligation to present this letter to DD California's Board of Directors, he hid it. The February 10 LOI was addressed only to Textor and evidences Century's desire to acquire the stock of DD California from DD California's stakeholders at a premium price. The February 10 LOI also

evidences that Textor had been wrongfully representing to Century that he had control of all the DD California shares.

22.   Plaintiff is informed and believes and based thereon alleges that Textor never informed Plaintiff or any of DD California's other officers or directors of the fact that he had been secretly negotiating with Century regarding a potential sale of DD California, or that those negotiations had culminated in a letter of intent to purchase the company for a substantial premium.

23.   Defendant Textor suppressed the information regarding (1) the value of the consideration Textor received from the sale of his shares in DD California to DDH; and (2) the interest in the acquisition of DD California by Century, and others, so that Textor could siphon DD California's business, goodwill and relationships to DDH and/or divert a sale or financing by Century from DD California to DDH, to the detriment of DD California shareholders, including Plaintiff.

**B. Plaintiff Sells His Interest in DD California**

24.   In or about February 2010, Plaintiff sold his entire stake in DD California to DDH for $530,000 and resigned from his position on DD California's Board of Directors.  This price represented a steep discount and was a fraction of the share price Plaintiff would have obtained with the $65,000,000 sale to Century as contained in the February LOI.  Negotiations concerning this transaction occurred at DD California's in-person Board of Director meetings in Venice, California. Negotiations also took place through telephone calls and e-mails, including communications with Stork's attorney, Miles Feldman, located in Los Angeles, California.  The transaction was memorialized in a Stock Purchase Agreement (the "Stock Purchase Agreement") signed by Plaintiff and Textor.

25.   Pursuant to the Stock Purchase Agreement, the parties agreed that venue for any dispute arising under thereunder shall lie in the State and Federal courts of Los Angeles, California, and the parties submitted themselves to personal jurisdiction in California.

26.    As a member of DD California's Board of Directors, Plaintiff reasonably believed that he was aware of all facts relating to DD California's financial condition. On that basis, Plaintiff sold his shares of DD California stock.

27.    To induce Plaintiff into selling his DD California shares, Textor concealed the communications with Century, the February 10 LOI and Century's stated interest in purchasing DD California. Textor further concealed from Plaintiff the fact that he had already sold his shares of DD California stock for a purchase price of millions of dollars.

28.    Plaintiff is informed and believes that the following facts vividly illustrate Defendants' fraud and deception. Michael Bay discovered Textor's fraud and suppression of material information in March 2010; Bay then objected to Textor; Textor then purchased (in a move to shield his wrongdoing) purchased Bay's shares for millions of dollars (which is more in line with the value of Century's offer); and, Mr. Bay solder fewer shares in DD California to Defendants than Plaintiff yet received a much higher price per share than what Plaintiff had received.

## FIRST COUNT

### (Fraud Against All Defendants)

29.    Plaintiff repeats and reallages the allegations set forth in paragraphs 1-28, inclusive, as though fully set forth herein.

30.    Textor, on his own behalf, and on behalf of DDH, engaged in a fraudulent scheme to induce Plaintiff to enter into the Stock Purchase Agreement.

31.    Having made statements to Plaintiff, he had a duty to accurately disclose the consideration he received for the sale of his DD California shares to DDH. Textor then induced Plaintiff and the other DD California stakeholders to amend the Stockholder's Agreement to ratify their illegal act, all the while concealing his transfer of DD California shares at great personal benefits to himself.

32. Plaintiff was unaware of Textor's transfer of DD California shares for a purchase price of millions of dollars.

33. Textor intended to deceive Plaintiff by concealing the fact of his transfer of DD California shares.

34. Plaintiff reasonably relied on Textor's deception and was harmed thereby because Plaintiff was not given the opportunity to participate in the lucrative transfer of DD California shares to DDH.

35. Textor also owned a fiduciary duty, as a co-member of the Board of Directors of DD California, to disclose the communications with Century and the February 10 LOI.

36. Plaintiff was unaware of the February 10 LOI, or of any negotiations or communications with Century for the sale of DD California prior to entering into the Stock Purchase Agreement.

37. Plaintiff reasonably relied on the fact that any demonstrated interest in purchasing DD California would be fully disclosed to its Board of Directors.

38. In addition to the wrongful conduct set forth above, Defendant Textor also made affirmative misrepresentations of material facts to Plaintiff regarding the reasons why Plaintiff should sell his shares in DD California. Specifically, at in person meetings located at the DD California offices in Los Angeles, California throughout 2009 and in telephone calls in 2009, Textor repeatedly made representations to Plaintiff that (1) the future prospects for DD California as a going concern were limited, and (2) that there was not likely to be a significant sale of, or financial offer for, DD California. These specific representations were false and Textor knew them to be false at the time he made them.

39. Textor, as representative of DDH, intended to deceive Plaintiff by making affirmative misrepresentations and concealing the fact of its communications with Century so that Plaintiff would enter into the Stock Purchase Agreement. But

for Textor's deception, Plaintiff would not have entered into the Stock Purchase Agreement, and he was, therefore, harmed by Textor's deception.

40. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial, but not less than $8,000,000.

41. Defendants, in doing the things alleged herein, acted with a conscious disregard for Plaintiff's rights and are guilty of malice, oppression and fraud. Plaintiff is, accordingly, entitled to punitive damages against Defendants in an amount to be determined at trial.

## SECOND COUNT

### (Violation of California Corporations Code §25401 Against All Defendants)

42. Plaintiff repeats and realleges each allegation set forth in paragraphs 1 through 41, inclusive, as though fully set forth herein.

43. Defendants omitted to state material facts necessary to make the statements made not misleading in connection with the purchase of Plaintiff's shares of DD California stock.

44. Beginning less than two years before the filing of this action, Defendants omitted material facts regarding Century's expression of interest to purchase DD California with the intent to induce Plaintiff to enter into the Stock Purchase Agreement. But for Defendants' material omissions Plaintiff would not have entered into the Stock Purchase Agreement.

45. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial, but no less than $8,000,000.

///
///
///

### THIRD COUNT

### (Rescission of Stock Purchase Agreement Based on Fraud in the Inducement Against DDH and DD California)

46. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45, inclusive, as though fully set forth herin.

47. On or about February 11, 2010, based on the affirmative concealment of the February 10 LOI by Defendant Textor, Plaintiff executed a Stock Purchase Agreement and related documents, including the Release and Indemnification Agreement, under the terms of which Plaintiff sold his shares of DD California to DDH for the sale price of $530,000 and concurrently resigned his position on DD California's Board of Directors.

48. Defendant Textor (1) affirmatively concealed the communications and interest of Century to deceive Plaintiff and induce him to enter into the Stock Purchase Agreement; (2) affirmatively concealed the facts about the value of the consideration he received for the transfer of DD California shares to DDH; and (3) made affirmative misrepresentations of material facts regarding the reasons why Plaintiff should sell his shares in DD California and enter into the release.

49. Defendant Textor knew that had he revealed the facts about the aforementioned matters, and not concealed the truth of these matters from Plaintiff, Plaintiff would not have signed the Stock Purchase Agreement. Thus, Defendants made misrepresentations and concealed the truth in order to induce Plaintiff to sell his DD California stock at a deeply depressed price.

50. After Plaintiff entered into the Stock Purchase Agreement, he learned of Textor's concealment.

51. Plaintiff has suffered significant and substantial harm under the Stock Purchase Agreement and will continue to suffer continuing unjustified and unjustifiable financial and business losses if the Stock Purchase Agreement is not rescinded forthwith.

52. Plaintiff intends service of the summons and complaint herein to serve as notice of rescission of the Stock Purchase Agreement, and offer to restore the consideration received therefore, and thereby demands that Defendant restore to Plaintiff his stock in DD California.

53. As a result of entering into the Stock Purchase Agreement Plaintiff has incurred damages, expenses and losses in an amount to be proven at trial.

## FOURTH COUNT

### (Negligent Misrepresentation)

54. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 53, inclusive, as though fully set forth herein.

55. In order to induce Stork to enter into the Stock Purchase Agreement Defendants made misrepresentations.

56. Defendants' representations concerned then existing material facts and were false, and Defendants had no reasonable ground for believing them to be true.

57. Stork justifiably relied on Defendants' misrepresentations, by entering into the Stock Purchase Agreement.

58. As a direct and proximate result of Defendants' misrepresentations, Plaintiffs have been damaged in an amount to be proved at trial, but in excess of the jurisdictional minimum of this Court.

WHEREFORE Plaintiff prays for relief as follows:

1. Rescission of the Stock Purchase Agreement and all related documents and agreements including the Release and Indemnification Agreement;

2. Declaratory relief that the Stock Purchase Agreement and all related documents and agreements including the Release and Indemnification Agreement are null and void;

3. Damages in an amount to be proven at trial;

4. Punitive damages;

5. Interest;

6. Costs of suit;

7. Attorneys fees; and

8. Other such relief as the Court deems appropriate.

DATED: September 30, 2011    RAINES FELDMAN LLP

By: *(signature)*
MILES J. FELDMAN
Attorneys for Plaintiff
CARL STORK

**DEMAND FOR JURY TRIAL**

Carl Stork demands trial by jury on all claims upon which jury trial is available.

DATED: September 30, 2011       RAINES FELDMAN LLP

By: _____
MILES J. FELDMAN
Attorneys for Plaintiff
CARL STORK

---

Case No. 2:10-CV-07631 JHN (PLAx)
SECOND AMENDED COMPLAINT

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to within action; my business address is 9720 Wilshire Blvd., 5th Floor, Beverly Hills, CA 90212.

On September 30, 2011, I served the document(s) described as **SECOND AMENDED COMPLAINT** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Peter Goldman, Esq.<br>(pgoldman@broadandcassel.com)<br>BROAD AND CASSEL<br>100 SE Third Avenue, Suite 2700<br>Fort Lauderdale, FL 33394<br>*Attorneys for Defendants John Textor and Digital Domain Holdings, Inc. f/k/a Wyndcrest DD Florida, Inc.* | Michael S. Houske, Esq.<br>(mhouske@health-law.com)<br>Alexandra N. Thomas, Esq.<br>(athomas@health-law.com)<br>HOOPER, LUNDY & BOOKMAN, P.C.<br>1875 Century Park East, Suite 1600<br>Los Angeles, CA 90067<br>*Attorneys for Defendants John Textor and Digital Domain Holdings, Inc. f/k/a Wyndcrest DD Florida, Inc.* |

☐ (BY MAIL) I caused such envelope to be deposited in the mail at Los Angeles, California. The enveloped was mailed with postage thereon fully prepaid. I placed such envelope with postage thereon prepaid in the United States mail at Los Angeles, California. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid in Los Angeles, California in the ordinary course of business.

☒ (BY OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document(s) in a sealed envelope or package designated by the express service carrier, addressed as set forth above, with fees for overnight delivery paid or provided for.

☒ (BY E-MAIL) I sent such document to the individual(s) identified at the email referenced above.

☒ (FEDERAL) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 30, 2011, at Beverly Hills, California.

_____
Tawny Fukutomi